MANUEL NIEVES BONET ET AL., Plaintiffs and Appellants, v. AMERICAN RAILROAD CO. OF PORTO RICO, Defendant and Appellee.

No. 9546. Argued January 16, 1948.—Decided March 19, 1948.

*Enrique Báez García* for appellants. *Mariano Acosta Velarde, Daniel Pellón Lafuente,* and *Fernando Fornaris, Jr.,* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

Three actions for the recovery of damages were brought in the District Court of Mayagüez by Manuel Nieves Bonet, Angel Torres and Mercedes Pagán against the American Railroad Company of Puerto Rico, as a result of an accident occurred on January 2, 1944. By stipulation of the parties the three cases were heard together. The lower court dismissed the complaints in one opinion but rendered three separate judgments. Although plaintiffs have appealed separately, the appeals were consolidated by using only one transcript of the evidence. Like the lower court we shall dispose of them in a single opinion.

The only error assigned by appellants is to the effect that the lower court erred in finding the plaintiffs guilty of contributory negligence.

Since this assignment involves an attack against the weighing of the evidence we deem it advisable to copy the conclusions of the trial court as they were stated in its opinion:

"That in the afternoon of January 2, 1944 Manuel Nieves Bonet, Angel Torres and Mercedes Pagán, plaintiffs herein, were sitting at a table drinking rum and coca-cola at the bar of 'Boquerón Beach Club'; that in the evening, around 6:40 P. M., they were returning from Boquerón to Mayagüez in a Chevrolet motor vehicle plate No.

C–2648 which belonged to Manuel Nieves Bonet and was being driven by him while the other two plaintiffs, Angel Torres and Mercedes Pagán, occupied the front seat; that highway No. 18 is intersected by railroad tracks forming a grade crossing and that on the day of the accident there was no flagman, gates or chains; that the American Railway Company of Puerto Rico has never maintained a gate or gatekeeper at that crossing; that at the very instant that the motor vehicle driven by the plaintiff was reaching the railroad crossing formed by the tracks and insular highway No. 18, train No. 28 hauled by locomotive No. 37 which was operated by defendant's employees and which was bound from Lajas to Boquerón was approaching; that the employees who operated locomotive No. 37 of train No. 28 blew the whistle immediately before reaching the crossing, rang the bell of the locomotive and were driving the train at a low rate of speed; that locomotive No. 37 had its front lights on as well as all the lights of train No. 28 which was a passenger train; that the train was running with caution because it had warning of a crossing on the Boquerón depot and also because it had to stop at said depot, which according to the evidence, is about two hundred (200) meters from the crossing; that the vehicle had its front lights on and the brakes of said vehicle were in good condition; that Manuel Nieves Bonet as well as the other plaintiffs who rode in his car were familiar with the crossing and knew that the defendant had no gatekeeper, gates or chains at said crossing; that when the motor vehicle was approaching the crossing, Juan Acosta, foreman of the Department of Tracks and Works of the defendant, who lived in a house near the railroad crossing, made signals to the motor vehicle to stop before reaching the railroad tracks; that notwithstanding the signals made by the foreman Juan Acosta and notwithstanding the sound of the whistle and the bell, the Chevrolet automobile did not stop at any time before crossing the railroad and continued running until it was hit by the train.

"The court finds that the driver of the motor vehicle merely looked to his left, that is, where there was a train stationed in front of the Boquerón depot, that he did not look to his right, that is, in the direction from which the train with which he collided was coming, nor did he stop immediately before crossing the railroad or reduce the speed.

"In view of the oral evidence and the photographs presented, the court is of the opinion that the train with which the collision occurred was visible to the plaintiffs from a reasonable distance

before reaching the crossing; the court is likewise of the opinion that if the plaintiffs had looked they would have seen the train and had they taken the reasonable precautions of any conductor or of any person who attempts to cross a railroad crossing they would have avoided the accident. Plaintiffs' testimony in the sense that they heard the whistle and the bell but that they did not stop the vehicle or looked to their right because they believed that the sound of the whistle, as well as the lights that were thrown on the crossing, came from a train which was stationed at the Boquerón depot, does not excuse them from their duty to look in both directions immediately before crossing the railroad as well as to stop their vehicle before attempting to cross. (Citations.)

"Since it appears from the evidence as a whole that the plaintiffs knew that the defendant did not have a gate or gatekeeper at the crossing of the accident; and since it is disclosed by the photographs and the oral evidence that the occupants of the vehicle could have seen the train and avoided the accident if they had exercised reasonable diligence, the court is of the opinion that the proximate and immediate cause of the accident was the conduct of plaintiffs themselves because of the manner in which they attempted to cross the railroad. (Citations)

"At the place of the accident there were signs at both sides of the tracks at a reasonable distance which read 'Caution, the train', 'Railroad Crossing', 'Stop, Look, Listen'. The plaintiffs testified that they were familiar with the place of the accident; that they had frequently passed by it; that they knew that the defendant did not maintain a gate at said place and they knew that they were approaching the railroad crossing; and notwithstanding this they did not stop their vehicle or looked in both directions immediately before crossing . . . ."

We have carefully read the lengthy transcript of the evidence in these cases and we are of the opinion that the lower court did not commit the error charged. The uncontradicted evidence showed that although the defendant did not have gates, chains or gatekeepers at the crossing where the accident took place, of which plaintiffs were aware, the proximate cause of the accident was the conduct of plaintiff Manuel Nieves Bonet, driver of the truck in failing to stop the vehicle or reduce the speed when reaching said

crossing and in continuing to run across the railroad tracks despite the fact that the train was coming with its lights on, ringing the bells and blowing the whistle.

Appellants argue that according to the ruling in *Cook* v. *Atlantic Coast Line R. Co.,* 196 S. C. 230, 13 S. E. (2d) 1 (South Carolina, 1941), ". . . when there exists, as in Puerto Rico, a statute which imposes the duty of maintaining gates at grade crossings (paragraph (*q*), § 3 of Act No. 70 of December 6, 1917)[1] the doctrine of contributory negligence should be abandoned where the failure to comply with the statute on the part of the defendant is the cause of the accident unless, in addition to a want of care. . . the accident is due to the gross negligence or some unlawful act of the injured party."

We do not agree. The case of *Cook* v. *Atlantic Coast Line R. Co., supra,* was decided pursuant to a statute to whose specific terms the court referred as follows:

"Under the specific terms of the signal statute, the common-law defense of contributory negligence is eliminated from our consideration. The language of the statute (Section 8377, Code 1932) is that, if the failure to give the specified signals contributed to the injury, liability for all damages caused by the collision is imposed upon the railroad company, unless, in addition to a mere want of ordinary care, it is shown that gross or wilful negligence or unlawful act, chargeable to the person injured, contributed to the injury."

If we compare the South Carolina statute with ours, § 3(*q*), *supra,* we can readily see the difference in their lan-

[1] Paragraph (*q*) of § 3 of Act No. 70 of 1917, "Public Service Act", provides: "(*q*) Safety Devices for Crossings, etc.—If a railroad company, to contract and maintain chains, gates, or other suitable protective devices, at all grade crossings of insular public roads and at all such other public crossings as the commission may designate, and subject to rules, regulations and order of the commission, to fence in or otherwise properly guard or protect its tracks at such places as the commission may designate, so as to keep animals from entering upon such tracks; to provide its locomotives with bells and whistles which shall be used upon approaching curves, tunnels, and road or street crossings and whenever necessary as a warning of the approach of such locomotives and trains which shall reduce their speed to a minimum on streets crossings, and shall use, after sunset, such lights as may be necessary and the commission may determine."

guage and scope. While the former eliminates ordinary contributory negligence on the part of the injured party and only makes him liable when he is guilty of gross negligence or of any unlawful act, our statute merely imposes a duty on the railroad companies and says nothing about the effect, as to liability, of the negligence that might be chargeable to the person injured in any accident.

The doctrine of contributory negligence on the part of the person injured is not eliminated from our consideration because of defendant's negligence in failing to maintain gates and chains at the crossing as provided by Act No. 70 of 1917. We have so held, among others, in *Domínguez* v. *Porto Rico Ry., L. & P. Co.,* 19 P.R.R. 1034; *Rosado* v. *Am. R. R. Co. of P. R.,* 38 P.R.R. 436, and *García* v. *Am. R. R. Co. of P. R.,* 45 P.R.R. 738. In this last case although we decided that the defendant company was negligent in failing to comply with the requirements of safety and protection provided by Act No. 70 of 1917, we held on page 748, that "The contributory negligence of this plaintiff, we think, arises from the evidence *as a matter of law.* His very statements show that he was familiar with the crossing and knew that there were no gates or chains there. It has been proved that the view was obstructed and the engineer Totti testified, and his testimony was not contradicted, that a view could be obtained at a distance of three meters from the crossing. The circumstances of this case show, in our opinion, *that the driver of the motor vehicle should have exercised special care when reaching the crossing.* It appears, however, that he exercised no other precaution than to travel at 6 miles per hour, without looking both ways on the tracks and that he made no attempt to look or listen." (Italics ours.)

And further: "We do not share the view of the trial court with respect to the exclusive character of the negligence of the defendant. We are of the opinion that the con-

duct of Francisco Olmeda, in *failing to adopt precautions required by prudence, constituted a substantial factor and played an important part in causing the accident."* (Italics ours.)

The facts in *Cook* v. *Atlantic Coast Line R. Co., supra,* and in other similar cases cited by appellants, may be distinguished, as to the manner in which the accident took place, from the facts in the instant case. In the *Cook* case for example, the driver of the automobile stopped on reaching the crossing while a south-bound train passed, making noise and leaving dust and smoke in the air; that while said train was passing another north-bound train was approaching the crossing without sounding any warning and collided with the automobile which had already proceeded upon the crossing. It was found that due to the smoke and dust caused by the first train in passing, as well as to other obstructions which were near the crossing, it was impossible for the driver of the automobile to see the second train approaching. Under these circumstances and according to the special statute to which we have previously referred, it was held that plaintiff was not guilty of gross or wilful negligence and that the accident was due to defendant's negligence in failing to give the statutory crossing signals.

The situation of facts in the case before us is different. Here the driver of the truck at no time stopped his vehicle in approaching the railroad crossing but merely watched another train which according to him was operating in a sidetrack at the Boquerón depot two hundred meters away from the crossing, without paying any attention to the warning signal sounded by the train which was coming along the regular track, at a moderate speed, blowing the whistle and ringing the bell and with its lights on. According to the oral evidence believed by the court and the photographs admitted in evidence, if the driver of the truck would have stopped on reaching the crossing and would have looked to

his right he could have seen the train before going on the crossing. The fact that he did not hear the sound of the whistle or the bell may perhaps be explained by the fact that the cab of the truck was closed because of the rain and by reason of the noise caused by the moving truck, but these circumstances cannot make the defendant liable, but on the contrary, should have been another reason for him to stop the vehicle. If, as testified by Nieves Bonet, he believed that the train that was operating in the depot might have gone on the crossing, with more reason he should have stopped his vehicle and ascertained the true situation. We are of the opinion that the defendant company can not be charged with negligence because said train was operating in the depot in a sidetrack at a distance of two hundred meters at the same time that another train, running along the main tracks and giving warning of its approach, was reaching the crossing. That the driver of the vehicle was negligent is further shown by the fact that he did not see or pay any attention to the stop signals given by the foreman before reaching the crossing.

In our opinion, the lower court did not err in deciding that the accident was due to the contributory negligence of the driver of the truck, and consequently the judgments are affirmed.